The next case of the afternoon is 4090454, People of the State of Illinois v. Michael Brown. Mr. Vonneman for the appellant, Ms. Sutton-Johnson for the appellee. You may proceed. Thank you, Your Honor. As the Court knows, my name is Mike Vonneman. I represent the defendant in this case. In this case, jury instruction 24-2509 was given to the jury after the jury already began deliberations. I believe the jury instruction was wrong, it was harmful, it was unfair, and should result in a new trial for the defendant. The jury instruction speaks of a person who initially provokes the use of force against himself is justified in the use of force only if the force, and it goes on, and he has exhausted every reasonable means to escape the danger. The problem is there is absolutely no evidence whatsoever that this defendant initially provoked the force, the use of force. At the initial jury instruction, the state had asked for this instruction, and the trial court said no. And the trial court said, but there is certainly no direct evidence that it was the defendant himself who threw a punch that initiated anything. And I don't frankly think there's even been suggested by any of the evidence, although I suppose one could argue that it's possible based on the witnesses who said they didn't know through the first punch that it could have been the defendant. The problem is all five of the guys that were in the apartment when this thing happened testified, and all five of them said it was not the defendant that started it. I believe Mr. Hosta said a guy at the door punched Twinn in the face. Mr. Eric Foster said a guy came in trying to get Montel. Montel Jones said one guy punched his uncle after another guy came after him. Angie Walker said a guy rushed in after words of exchange. The defendant said Calvin Walls tried to get him. Even LeVar Walls said that when he looked out into the hallway, he saw his two brothers arguing with a tall black guy. He later identified the defendant as the guy who shot him. He did not identify this guy as the defendant. So the defendant never initiated any violence or anything whatsoever. He did not provoke anything. Did either the prosecution or the defense have a theory as to why it would appear one or two of the Walls brothers had some reason to dislike or interact with somebody in the apartment across the way? One of the witnesses I believe said that one of the Walls brothers said, where's my brother? And his brother did live across the hall. So it could have been very well just that they were knocking on the wrong apartment door. And that irritated somebody? Well, then what happened was one of the Walls brothers and one of the guys that was playing Madden football, that guy said to one of the Walls brothers, hey, we were in prison. And the guy said, no, we weren't. And then for some reason that got everybody mad. But the defendant was not involved by all accounts with that argument whatsoever. He happened to be the tenant, is that right, of that apartment? He was the tenant. He was the guy that had the Madden football game. And these five guys were playing Madden football. Didn't the trial court initially refuse the instruction because he said there was some ambiguity as to who was the initial aggressor? Well, he said, well, that's the point I read you on. There was no direct evidence. Well, doesn't people be heaten, hold that the instruction, that instruction should be given if there is a question of whether the defendant was the initial aggressor? There's no question whatsoever. All five of the guys. Okay, so wait. I mean, I understand that. Back to my original question, you're saying, yes, the trial court did say it was ambiguous, but you disagree with that and the trial court was wrong. All he said was, Your Honor, was that it's possible based on those witnesses who said they don't know who threw the first punch. But there weren't any witnesses like that. Unless you count the downstairs people that didn't see what happened. Everybody that was in that room testified as to who threw the first punch. I think he was just speculating off the top of his head. I don't think he used the word ambiguous. But, Mr. Bonham, you're limiting yourself, and I think the trial court did, too, to the initial punch. I am. And the cases, like Deoka and some others, seem to say the initial aggressor can change in the proceeding. You're not limited to that first time. So, in other words, when the violence steps up, or maybe the true initial, the actual initial aggressor, backs off and heads back to his apartment, and the defendant comes and shoots him in the back with a gun, then the defendant becomes the initial aggressor at that point. But that's not the facts in this case, Your Honor. Well, isn't that what the state argued? Well, the facts are not that. Why aren't the facts that the LeVar Wall was shot in the back? Because the defendant said LeVar Wall came into his apartment with a knife. And he shot at LeVar Wall when he told him to drop the knife, and he wouldn't do it. He took a swing at it. I thought the physical evidence supported LeVar Wall's being shot in the buttocks, back of his leg, and through the door of his apartment after the door was shut. Well, the defendant said he shot him in the legs. He also said he shot at him when he was standing by the door. And that's how the bullets got in through the door. But the physicians testified where the bullets entered and exited. In the defendant. I mean, in Mr. LeVar Wall's. Right. The defendant said he shot him in the leg. But in the back of the leg. So in other words, he's going away from the defendant, and he's getting shot from behind. Judge, there's also cases that talk about, you're not asking for perfect stuff here from a guy who's shooting at people. Well, I mean, these guys twice have busted into his apartment. First they bust in. Then one guy gets out. He closes the door, locks it to prevent any more violence. They break his door down again. Because the other brother's in the apartment. Right. Being held, right? Well, being held, he's still there. I mean, the defendant's trying to get these guys out of the apartment. He doesn't know what's going on behind him. He doesn't know that guy's still there. They've got no reason to hold him. They just busted back down his door again. Now they come in again with knives. That's your client's testimony. Your client is the only one who testified that there were knives involved. No. Mr. Walker said he saw what looked like a knife. And also, Mr. LaVar's girlfriend said when he first went out into the hall, he looked around. And then he went back into the kitchen. And then he went back into the hall. Now, she didn't say he had anything. But why would he go back into the kitchen unless he's going for some kind of a weapon? Well, it's harmful in that it reinforces the jury, I'm arguing mistaken belief, that there was evidence that the defendant initially provoked the violence. If they believed that, I think mistakenly, they may have believed the defendant had not exhausted every reasonable means to escape. I.e., he didn't take off and ran. He fought back. And the correct instruction says, he does not have to use every reasonable means to escape. And then I can say it's unfair because now the jury instructions come in after the closing arguments. So the defense attorney never gets to argue that the defendant was not the initial aggressor. So it's a bad instruction from your perspective, but if it was going to be given, the harm would be lessened somewhat if it was given before closing argument, because then you could clarify. Right, I agree. I may still be arguing that, but it's certainly bad here when the defense attorney can't get up and say, now wait a minute, you know, my guy wasn't the initial aggressor. But he didn't have to make that argument because that jury instruction didn't come in. And now he's just stuck. I think it requires reversal because there's a reasonable possibility that a different result may have been reached because it bolstered the jury's belief that the defendant had a duty to escape and exhaust every reasonable means to escape, when in fact he did not have that duty. So I think you should get a new trial based on that. If there's no other questions on that issue, I'll deal with the reasonable doubt issue. The defense here is defense of dwelling, to prevent or terminate unlawful entry into the dwelling. I don't think there's any dispute that the Walls came busting into his place on at least two, maybe three occasions. So at least as to what happens in the apartment, I don't think there's any dispute at all what happens. Then as LaVar Walts and the defendant goes into the hallway, he doesn't shoot LaVar again while he's in his apartment. He turns and here comes Calvin and David a third time to attack him. And he shoots in self-defense. Arguably it's in defense of the dwelling since he's trying to get back, but he's certainly in self-defense. Now these guys have twice attacked him. He doesn't know what they've gone and got. Apparently they left for a few minutes and then came back. Mr. Bonneman, the jury was instructed on self-defense, and they were instructed on a non-aggressor's use of force. That's right. And so aren't those jury determinations? Well, I'm saying the jury was wrong. From your viewpoint of the evidence. Correct. Yes, Your Honor. It's the defendant's perception of the peril, not the actual peril. And he certainly thought he was in peril after these guys came at him a third time. And also there's cases, as I put in my brief, that shots can be fired even after the attack is over. You don't have to have perfect judgment. As far as Dr. Denton, he testified that David Walts had a contact wound to his face. So this is pretty close contact. Calvin Walls had two wounds, his head and his wrist. And his head wound was probably fired from a gun 18 to 24 inches from where it hit him. So again, this is close contact. This isn't a matter of these guys coming up the steps and him just firing away and shooting him. And my third issue is I believe the state has conceded this $5 a day credit. The child advocacy fee and the drug court fee are actually fines. Does the courts have any other questions? And that's all I have. Thank you. Thank you. Good afternoon. May it please the court, the counsel. Addressing first the propriety of the jury instruction, it's the state's belief that the jury asked a question on a subsequently legal issue. We note that the defendant takes no issue that the answer provided was a misstatement of the law. It simply is their argument that there was no evidence to support giving that instruction. The state disagrees. At the state, at the trial, the state set forth two separate theories. The first theory was that Andrew Walker, who was defendant's friend and defendant's guest, was crude in his verbal altercation with Calvin Walsh. And that that is actually what provoked this first incident. The alternative theory, and the one that I personally believe in the jury verdicts is the one the jury accepted, was that there were actually two incidents here. And the evidence supported both of those theories. Because I believe the jury's finding that the defendant was not guilty of the aggravated battery of Montel Jones, but guilty of the offenses against the Walls brothers. I'll focus more of my comments on the alternative or second theory. There was more than enough evidence to support this being two different events. And I note only slight evidence is needed. But again, there was substantial evidence. First, the jury was presented with evidence that the defendant shot 14, at least 14 bullets. But the witnesses who testified to it testified that they were shot in two rounds. Leonard Hosea, and I may be pronouncing names incorrectly, so I apologize, defendant's friend testified that he heard more than one set of gunshots. Tanisha Phillips, who was LaVar's girlfriend, similarly testified. She said that she had been in the restroom and she heard the first round of gunshots. She had had surgery to her foot, was not moving very fast, but started making her way back to the living room, which is also where the front door into the apartment is located. Because there were two and four-year-old children in that living room. As she makes her way down this hallway and she finally reaches this door, again not moving fast, she turns and she sees defendants shooting again. This would be the second round of the gunshots. This supports the state's theory that there were two separate events. But more importantly than that, there is evidence that after the defendant started shooting inside his own apartment, everybody fled. Defendant's friends fled. The Walls brothers fled. Nobody was left in defendant's apartment but defendant. Leonard Hosea said that as soon as there was a fighting, he left. Eric Foster, Montel Jones, Andrew Walker, all said they fled after the first round of gunshots. The reason they fled is because Montel had been shot three times. They were leaving to get him medical assistance for his gunshot wounds. And the paramedic said there were five wounds. So apparently two of those gunshots went through his body entirely. The Walls brothers all fled the apartment. Two of them, Calvin and David, the belief is that they went downstairs to actually leave the building completely. This was based on LaVar's testimony that he did not see his brothers in the hallway behind him as he was fleeing and that they were running back up the stairs when he was being shot in his own apartment. And again, LaVar was fleeing to the safety of his own apartment across the hallway. This clearly, this abandonment of the apartment, abandonment of this original fight, suggests there were two events. This is when the second event picked up and defendant was unquestionably the initial aggressor in this. Everybody has fled and defendant decides it's time to take his gun now outside of his apartment. Over pursuing the fleeing LaVar, who as you have pointed out Justice Boak, was shot in the back twice, in the buttocks twice, and then a third time in the leg through the door. He is shooting him as he is crawling into his apartment because the blood spots show that there were a couple of pools indicating LaVar had moved his body across the floor and farther into the apartment. LaVar testified he was trying to kick the door closed. Tanisha confirmed she was trying to help him when she realized the defendant was shooting to get the doors closed. The evidence with projectile rods through the door showed that defendant's account that he was shooting LaVar while LaVar was standing in front of the door and the door was closed simply doesn't match up. The projectile rod showed it was as the door was progressively closing that these bullets were going through. They were being aimed at where defendant saw LaVar fall on the floor, which is why they were aimed down. They weren't up here level, they were down in the lower quadrant of the door because when LaVar fell and was trying to shut the door, defendant knew LaVar was on the ground. I'm shooting on the ground. This evidence is not slight, and it supports the trial court's giving of the jury instruction, which again, nobody argues was a misstatement of the law. Because the jury seems to have accepted the state's alternative theory, that this was a second event, there's also no question defendant was the initial aggressor in that event. Do you have any questions on that issue for me? Moving on to the second argument, that the state failed to prove defendant guilty beyond a reasonable doubt. In making this argument, defendant presents nothing but his account of the events. But defendant's account doesn't exist in a vacuum. We have facts, and the state got to point out the facts that were inconsistent with this account. First of all, he pursued the brothers after they had fled, and he shot them while they were unarmed. This certainly counts against a finding of self-defense, and it does support the jury's finding. Respectfully, I would ask this court not to second-guess the jury's finding. I realize you're familiar with the arguments I made in my brief, so I will summarize my points at this time. To successfully assert a justification of defense of the dwelling, you have to be in the dwelling. The only person who was shot, the evidence says, inside the defendant's apartment was his own friend Montel Jones. That's the only one shot inside the dwelling. Could you clarify for me, counsel, who has to be in the dwelling? The defendant, to be defending his dwelling, must be inside the dwelling. To use that justification. So his justification for shooting the Walls brothers is simply not correct. The Walls brothers were not shot inside the dwelling.  Is Montel the only person, the only Madden player, who ends up getting shot? Yes. Does the forensic evidence show who shot him? Pardon? Does the evidence show who shot him? There's no question the defendant shot him. The defendant is the only one that has a gun. The defendant never denied shooting him. The defendant said he was aiming at one of the Walls brothers, who was, I believe, tussling was the way they had described it at the time. And sadly, he hit his friend instead of the Walls brothers. So there is no question regarding that issue. So he then argued alternatively that he shot the Walls brothers in self-defense. Again, the evidence doesn't support this. First, following up on the state's theory that these were two separate events. But even if it wasn't in one event, the right of self-defense does not allow the pursuit and the killing of another person, even if it's an initial aggressor, after that person has abandoned the fight. The Walls brothers abandoned the fight. Defendant's friends abandoned the fight. The Walls brothers were unarmed. The only one who saw anybody with a gun, even, again, defendant's own friends, was defendant. He was the only one seen with a gun. All of the other witnesses said nobody had a gun or any other kind of weapon at any time. Andrew Walker said, I saw something in LaVar's hand. When LaVar, as my recollection is, he was standing at the doorway, and I believe he said he saw LaVar with something in his hand. But Walker was very clear and followed that statement up immediately with the quote, I'm not going to lie and say it was a knife. I don't know what it was. That's not conclusive evidence that LaVar had a knife. And it leaves us with the fact, as the jury was told, the only person who had any account of LaVar having a weapon was defendant himself. It was contrary to everybody else's direct testimony. And it's not that the other witnesses just didn't address the issue. They were asked and they said, no, I saw no other weapons. The evidence also established that LaVar suffered three gunshot wounds, as I've already mentioned. Two were to the back and then one was in the leg, also, as I recall, from the rear side of the thigh or the hip area. He was shot the third time through the door. But after that, the defendant pushed open LaVar's apartment door and proceeded into the apartment. He's standing over LaVar, threatening to shoot him another time with these two- and four-year-old children over here and the girlfriend on the floor, when he hears Calvin and David coming up the stairs behind. And I grant, this is based on largely LaVar's testimony at this point, but Tanisha's also confirms this. Then it causes the defendant to turn his attention from LaVar on the floor in front of him to Calvin and David, who are now coming up behind him and trying to come into the apartment. He shoots both of them and they fall where they were shot. The first one at the threshold of the door was Calvin, and he fell face down with three gunshot wounds. The second one, David, came up on his brother, but his brother's on the floor blocking this entrance to the apartment. And he's shot again and he falls on top of Calvin. And when they are found, the two brothers are face down on top of each other in the middle of this doorway. Their head is inside LaVar's apartment. Their feet are in the exterior hallway that goes between the defendant's apartment and LaVar's. The evidence shows that there were five bullet casings found in the middle of LaVar's apartment floor. As the officer testified, the way the bullets eject out of the gun, they eject up and to the right. Therefore, it is evidence that as LaVar testified, the defendant was not in the hallway shooting. He was in LaVar's apartment shooting out toward the hallway and killing Calvin and David Walls. It's also interesting that four of the five gunshot wounds that were shot and were the reason for the death of David and Calvin were shot, according to the pathologist, greater than two feet away. And the pathologist testified to the defensive stance based on the way they went in the wrist and down that the victims must have been standing in. All of that testimony, hard facts, uncontradicted facts, are completely at odds with the defendant's account of hand-to-hand battling and tussling in a hallway. You can't match up defendant's account. When defendant is asked this during his cross-examination, how do you reconcile your account with the evidence showing that their head was inside the apartment, their feet were out? And I have to add something here, I apologize. Defendant also testified that when he shot them during this hand-to-hand tussle, they fell in the hallway where they were shot and they never got up and they never moved. So by his account, they should have been in the middle of the hallway floor. When he was asked how he reconciled that with the evidence that they were in the doorway, he could offer no explanation. There wasn't an explanation. All of this evidence, clearly, that there were three brothers, all unarmed, they were shot eight times after they abandoned this first altercation, is clear proof that the jury's finding was certainly not unreasonable and a rational trier of fact could have and did find that he was not acting in self-defense. It was murder and it was aggravated battery. And the State would ask that you affirm. Hello? Hello? Just briefly, I don't have a transcript in front of me, but when I wrote my reply, and perhaps it should be checked, I have that LaVar Wall's hand, Mr. Walker actually testified that the object in LaVar Wall's hand looked like a knife. That's what I think he said. At best, at least he had something in his hand that he would agree with. LaVar's defendant not having a self-defense theory because the Walls brothers abandoned the fight, well, at best they regrouped, because by all accounts, they came charging up the stairs after this defendant. And these guys aren't little guys. Calvin Walls was 5'11", 250. David was 5'9", 259. So they certainly didn't abandon any fight. I've got just a moment, Your Honor. And as far as the State's theory that he just shot these guys while they were in the hallway, well, how did he get a contact wound to his head? And the other guy was shot within 18 to 24 inches of his head. To me, that's more in sync with hand-to-hand combat. And where they actually fell, the defense that they fell in the hallway or they fell halfway into LaVar's apartment, I don't think matters either. His point is that they came at him and they got into a fight. Now, did he stick around and look exactly where they fell? Maybe not. But it's self-defense, whether it happens halfway into his apartment or halfway in the hallway. Thank you, Your Honor. No problem. Thank you, counsel. We'll take this matter under advisement. The hearing is adjourned.